RENDERED: SEPTEMBER 26, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000405-DG



DATE 10/22/19 JAF

SUZANNE WAUGH                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                           CASE NO. 2017-CA-000255-MR
JEFFERSON CIRCUIT COURT NO. 2014-CI-004970

CAROL PARKER
AND
JOHN PARKER                                                           APPELLEES

## OPINION OF THE COURT BY JUSTICE BUCKINGHAM

## AFFIRMING

Suzanne Waugh appeals from an opinion of the Court of Appeals that affirmed an order of the Jefferson Circuit Court dismissing her claims for personal injuries in a civil action against her landlords, John Parker and Carol Parker. Waugh's claims were based upon injuries she sustained as a result of a porch railing giving way, causing her to fall and suffer an ankle injury. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Waugh and her boyfriend, James Parnell, rented a single-family home from the Parkers.[1] The residence included a side porch surrounded by an old,

---

[1] Although the couple leased the residence together, only Parnell signed the lease, with Waugh being listed as an occupant. However, that distinction is not significant because "[T]he duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant

loose, and poorly maintained railing. From her prior inspection and knowledge of the railing, Waugh was aware of its condition.[2]

In December 2013, as Waugh opened the storm door leading from the porch into the house, a sudden gust of wind caught the door and knocked her into the railing. The railing gave way, and Waugh fell to the asphalt surface below and fractured her right ankle.

Waugh filed a civil action against the Parkers in the Jefferson Circuit Court alleging they were liable for her injuries. Following the completion of discovery, during which Waugh disclosed in her deposition that she was aware of the poor condition of the railing through her prior inspection and knowledge of it, the circuit court granted summary judgment in favor of the Parkers.

The Court of Appeals affirmed the award of summary judgment, and this Court granted discretionary review to examine the effect of the Uniform Residential Landlord and Tenant Act (the URLTA) upon long-standing common law doctrine in Kentucky.

## II. STANDARD OF REVIEW

In considering a motion for summary judgment, a trial court must view the record in a light most favorable to the non-moving party, resolving all

---

himself." *Dutton v. McFarland,* 199 S.W.3d 771, 773 (Ky. App. 2006) (citing *Clary v. Hayes,* 300 Ky. 853, 190 S.W.2d 657, 659 (1945)).

[2] The lease agreement contained terms stating that the tenant had examined the property to the extent necessary to ascertain its condition and "[t]he premises are leased in the condition found and lessor shall not be liable to Tenant or anyone on the premises with consent or at the invitation of the Tenant for property damage or personal injuries caused by or arising out of the condition of the leased premises."

doubts in its favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). The trial court may grant summary judgment only if it concludes that no disputed issues of material fact exist for trial. *Id.* On appeal of a summary judgment, we must determine whether the trial court correctly found that the moving party was entitled to a judgment as a matter of law. *Id.* Because summary judgment involves questions of law, we need not defer to the trial court's conclusions; accordingly, we review the record *de novo. Blevins v. Moran,* 12 S.W.3d 698, 700-01 (Ky. App. 2000).

### III. THE PARKERS ARE NOT LIABLE TO WAUGH UNDER THE URLTA AND KRS 446.070

KRS 383.500 authorizes cities, counties, and urban-county governments to enact the provisions of the URLTA. The Act has been adopted in Jefferson County.

KRS 383.590 provides in relevant part that "[a]t the commencement of the term a landlord shall deliver possession of the premises to the tenant in compliance with the rental agreement and KRS 383.595." KRS 383.595 (1)(a) provides that a landlord shall "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety[.]"

The Louisville/Jefferson County Metro Government Property Maintenance Code (the Code) § 156.053(M) provides that "[e]very handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition[.]"

3

Waugh contends that the URLTA, through its provisions contained in KRS 383.590 and KRS 383.595(1)(a), imposed duties upon the Parkers that they breached by failing to maintain the railing in a safe condition or to warn her of its dangerous condition. She alleges that "residential landlords in the Kentucky cities and counties that have adopted the URLTA have a statutory duty (which corresponds with the common law duty imposed upon all landlords throughout the entire Commonwealth) to bring their property into compliance with health and safety codes before making the property available for rent." Waugh alleges that the Parkers violated the provisions of the Code addressing porch railings.

In support of her position, Waugh refers to the affidavit of Dennis Martin, a code enforcement supervisor with the Louisville/Jefferson County Metro Government. Martin stated in his affidavit that in his opinion the porch rail was in a state of disrepair when Waugh fell and that he would have cited the Parkers for violation of the Code had he been made aware of its condition.

Alleging a breach of a statutory duty under the URLTA, Waugh contends that the breach constitutes negligence per se pursuant to KRS 446.070, which states that "[a] person injured by the violation of a statute may recover from the offender such damages as he sustained by reason of the violation, although penalty and forfeiture is imposed for such violation."

*Milby v. Mears,* 580 S.W.2d 724 (Ky. App. 1979), summarizes the general principles relating to a landlord's duty in the context of a tenant's claim for personal injury against a landlord:

4

> It has been a longstanding rule in Kentucky that a tenant takes the premises as he finds them. The landlord need not exercise even ordinary care to furnish reasonably safe premises, and he is not generally liable for injuries caused by defects therein. Nevertheless, it is an established principle that a landlord has a duty to disclose a known defective condition which is unknown to the tenant and not discoverable through reasonable inspection.

*Id.* at 728 (citation omitted). In summary, landlords generally do not owe any duty to a tenant except to warn of any latent dangerous conditions that may exist on the property. *Dutton v. McFarland*, 199 S.W.3d 771, 773 (Ky. App. 2006) (citing *Carver v. Howard*, Ky., 280 S.W.2d 708, 711 (Ky. 1955)) ("Where the tenant is put in complete and unrestricted possession and control of the premises, as here, the landlord is liable only for the failure to disclose known latent defects at the time the tenant leases the premises."). Waugh contends, however, that the statutory duties in the URLTA supplant the general principles set forth in *Milby* and *Dutton.*

The Parkers, on the other hand, contend that they have no liability pursuant to *Miller v. Cundiff*, 245 S.W.3d 786 (Ky. App. 2007). In that case a tenant fell on a piece of loose carpet she had previously asked the landlord to repair. The tenant sought damages for personal injuries, alleging the landlord breached a duty imposed by the URLTA requiring a landlord to make repairs to the premises as required by KRS 383.595(1)(b). *Id.* at 787-88.

The tenant maintained that the URLTA abrogated the common-law rule that shielded a landlord from liability for injuries resulting from known defects on the property. *Id.* at 788. In analyzing the issue, the Court of Appeals in

5

*Miller* considered the language and legislative intent behind Kentucky's version of the URLTA and concluded:

> KRS 383.510 states that "[u]nless displaced by provisions of [the URLTA], the principles of law and equity . . . supplement [the URLTA's] provisions." This language clearly indicates that the URLTA was intended to supplement, not replace the common law. Therefore, . . . we cannot find that Kentucky's version of the URLTA demonstrates a clear intention on the part of the legislature to depart from the common-law standard for landlord liability.
>
> Moreover, unlike other jurisdictions which have enacted the URLTA on a state-wide basis, Kentucky merely authorizes individual counties and cities to adopt the provisions of the URLTA. Such a limited and local adoption of the URLTA does not lend itself to a conclusion that the legislature intended a sweeping modification of the common law.

*Id.* at 789 (internal citations omitted).

The Court of Appeals noted that "the legislature's intent to abrogate the common law must be clearly apparent, and is not to be presumed." 245 S.W.3d at 789 (citing *Ruby Lumber Co. v. K.V. Johnson Co.*, 299 Ky. 816, 187 S.W.2d 449, 453 (1945)). Like the Court of Appeals in *Miller*, in reviewing the provisions of the URLTA, we see no indication that the legislature intended to abrogate the common-law standard for landlord liability.

Waugh argues that *Miller* is distinguishable because the specific provision at issue there was the landlord's duty to repair pursuant to KRS 383.595(1)(b), which requires a landlord to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Waugh states that her claim, however, is premised on KRS 383.595(1)(a),

which imposes a duty to comply with building codes materially affecting health and safety.

Waugh's attempt to distinguish *Miller* is unpersuasive. The well-reasoned decision in *Miller* unambiguously holds that the URLTA does not replace the common-law rules of landlord liability. 245 S.W.3d at 789. We conclude, therefore, that regardless of the specific provision of the URLTA allegedly violated, Waugh's claim for personal injury is controlled by common law principles and not the URLTA.

Further, Waugh is not entitled to recover damages from the Parkers under KRS 446.070. As noted above, that statute provides, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

KRS 446.070 codifies the doctrine of negligence per se and allows an injured party to recover "for a violation of a statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008). In order to recover damages, the plaintiff must establish that she was within the class of persons intended to be protected by the statute; that the statute was intended to prevent the type of occurrence that took place; and that the statutory violation was a substantial factor in causing the plaintiff's damages. *McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224, 227-28 (Ky. 2015).

7

Waugh's claim fails as a matter of law because the URLTA includes remedies for a landlord's noncompliance with KRS 383.595 that materially affects health and safety. More specifically, KRS 383.625 ("Noncompliance by landlord") and KRS 383.635 ("Remedies for noncompliance that affects health and safety") provide that in the event of a violation of the URLTA, the tenant has the options of either terminating the lease or repairing the damage at the landlord's expense when the landlord fails to cure a violation of KRS 383.595.

"Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Because the URLTA defines both the unlawful act and provides the applicable remedy for a violation of the prohibited act, *Gryzb* is applicable here. We conclude summary judgment was proper on this issue.

## IV. THE PARKERS ARE NOT LIABLE TO WAUGH UNDER THE COMMON LAW

Waugh also contends that the Parkers are liable to her for damages due to her injuries under common-law safety rules. Waugh cites *Rietze v. Williams*, 458 S.W.2d 613 (Ky. 1970), *Kidd v. Price*, 461 S.W.2d 565 (Ky. 1970), and *Mullins v. Nordlow*, 170 Ky. 169, 185 S.W. 825 (1916), in support of her position.

*Rietze* is not applicable for several reasons. First, it has been overruled by *Centre College v. Trzop*, 127 S.W.3d 562 (Ky. 2003), "insofar as it relies on

KRS 13.081 for the proposition that KRS 446.070 allows recovery for violation of an administrative regulation." *Id.* at 566. Second, the facts in *Rietze* were such that the tenant did not know and could not have known with reasonable inspection that the water heater had been improperly installed by the landlord's contractor. Thus, as opposed to the situation here where Waugh knew of the defective porch rail, the tenant in *Rietze* was unaware of the defective water heater and a reasonable inspection would not have revealed it. Third, *Rietze* was not strictly a landlord-tenant case as the defendant was a rental property manager.

*Kidd v. Price* is not applicable as well. The holding in that case was that the defendant landlords could not be found liable for the death of tenant's employee who died as result of burns sustained in an explosion. The explosion allegedly was caused by gasoline vapors emanating from a drain that allegedly had been installed by some other tenant at his own costs, in his own addition, and for his own use. The Court held in *Kidd* that the landlord would have no liability in the absence of a showing that the landlord knew the installation was defective or by exercise of ordinary care should have known thereof, notwithstanding that the failure to include a P-trap violated the plumbing code or that the landlord retained the right to reject additions. *Id.* at 567. That holding is consistent with *Milby* because if the landlord in *Kidd* had been aware of the defect, the defect would have been latent thereby imposing a duty upon the landlord to warn of the defect. *Id.*

9

*Mullins v. Nordlow*, which involved the three victims of a fire that consumed Mullins' rental property, is likewise inapplicable because in that case, similar to *Rietze v. Williams*, the property, by its failure to have fire escapes, was in violation of the Tenement House Act and of the building code applicable at the time in Louisville. As noted above, such violations of ordinances were actionable at the time under then existing negligence per se rules. Furthermore, *Mullins* involved a housing unit with multiple tenants; therefore, the landlord had duties in that situation in connection with the common areas. *See Jaimes v. Thompson*, 318 S.W.3d 118, 119-20 (Ky. App. 2010).

In summary, under the common-law negligence standard, which remains undisturbed under the facts of this case, the Parkers are not liable to Waugh for damages in connection with her personal injuries because Waugh knew of the condition of the railing. *See Milby*, 580 S.W.2d at 728. The trial court correctly concluded the Parkers were entitled to summary judgment on this issue.

## V. JURAL RIGHTS

Finally, Waugh contends that "it is likely that the duty to comply with safety rules predated enactment of our state's Constitution. If that is so, any attempt by The General Assembly or Courts to limit a tenant's common law right to recovery for injuries resulting from a violation of safety rules would be unconstitutional under Sections 14 and 54 of Kentucky's Constitution[.]"

The jural rights doctrine precludes any legislation that impairs a right of action in negligence that was recognized at common law prior to the adoption of the Commonwealth's Constitution in 1891. Ky. Const. §§ 14, 54, 241.

Waugh has not, however, cited any pre-1891 case contradicting the rule in *Milby*. In fact, *Battres v. Heiss*, 2 Ky.L.Rptr. 308 (Ky. 1881), holds that it is as much the duty of the tenant as of the landlord to take notice of the dangerous condition of premises, and unless actual knowledge is brought home to the landlord, no recovery can be had on account of injuries received by reason of defects in the premises, even though there was no compliance with an ordinance as to repairs of such places.

## VI. CONCLUSION

We affirm the opinion of the Court of Appeals which affirmed the Jefferson Circuit Court's order of summary judgment dismissing Waugh's claims for damages against the Parkers for her injuries.

Minton, C.J., Buckingham, Hughes, Keller, VanMeter, and Wright; JJ., sitting. All concur. Lambert, J., not sitting.

COUNSEL FOR APPELLANT:

John C. Dodson
Nicholas Gaffney Evans
Thomas, Dodson & Wolford, PLLC


COUNSEL FOR APPELLEE:

Berlin Tsai
Joseph Patrick Hummel
Lynch Cox Gilman & Goodman, P.S.C.

11

COUNSEL FOR KENTUCKY DEFENSE COUNSEL, INC.

Joseph Wright
Thompson Miller & Simpson PLC

Andrew McGrath Yocum
Kriz, Jenkins, Prewitt & Jones, PSC